IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TONY MAURICE HORNE, SR.
   *Petitioner*,

v.

UNITED STATES OF AMERICA,
   *Respondent*.

Criminal No.: ELH-14-532
(Related Civil No. ELH-17-443)

## MEMORANDUM OPINION

This Memorandum Opinion resolves a Motion to Vacate, Set Aside, or Correct Sentence, filed under 28 U.S.C. § 2255 by Tony M. Horne, Sr., the self-represented petitioner. ECF 197 ("Petition"). Horne argues that he received ineffective assistance of trial counsel. The government has filed an Opposition to the Petition (ECF 208, "Opposition"), supported by several exhibits. In addition, it has filed a supplement to its Opposition. ECF 210. Mr. Horne has not replied, and the time to do so has expired.

Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and records of the case conclusively show the prisoner is entitled to no relief . . . ." This is such a case. No hearing is necessary. For the reasons that follow, I shall deny the Petition.

### I.    Procedural Background

Horne was indicted on November 12, 2014, along with five others. ECF 1. In Count Two, Horne and others were charged with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. The conspiracy began at least by January 2014 and continued to November 2014. *Id.* As to Horne, Count Two alleged that 100 grams or more of a substance containing a detectable amount of heroin was foreseeable to Horne in connection with the drug conspiracy. In Count Three, Horne was

charged, with others, with the offense of conspiring to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.

On November 4, 2015, Horne entered a plea of guilty to a lesser included charge of Count Two, under 21 U.S.C. § 846. *See* ECF 147. The Plea Agreement is docketed at ECF 148; *see also* ECF 208-1.[1] Horne signed the Plea Agreement on October 16, 2015. ECF 148 at 7. During the plea colloquy on November 4, 2015, under Fed. R. Crim. P. 11, the defendant was, of course, placed under oath. *See* ECF 208-2 (Transcript of November 4, 2015) at 2. The defendant was also advised that he had the obligation to answer the Court's questions truthfully. *Id.* at 4. Horne advised the Court that he was fully satisfied with the services of his attorney. *Id.* at 6-7.

Paragraph 6 of the Plea Agreement reflects that the parties disagreed as to the base offense level. The government believed it was a 24 under U.S.S.G. § 2D1.1(c)(8), while defendant believed it was a 16, under § 2D1.1(c)(12). In addition, the government believed that defendant qualified as a Career Offender under U.S.S.G. § 4B1.1, resulting in an offense level of 32 and a criminal history category of VI. *Id.* This matter was reviewed with petitioner during the plea colloquy, including that the issue would not be resolved until sentencing. *See* ECF 208-2 at 18-19.

Attachment A, the Statement of Facts, was appended to the Plea Agreement. *See* ECF 148 at 8-9. Horne signed it on October 16, 2015. *Id.* at 9. In the Statement of Facts, Horne admitted that, between January and November 2014, he was a member of a conspiracy to distribute and possess with intent to distribute heroin. ECF 148 at 8; *see also* ECF 208-2 at 35-38.

---

[1] At ECF 208-1, the government attached a copy of the Plea Agreement. It is the same as ECF 148.

The Statement of Facts referenced, *inter alia*, that defendant's telephone conversations with codefendant Fabian Gray were intercepted by use of a wiretap. ECF 148 at 8. Moreover, the intercepted communications reflected Horne's involvement in a drug transaction on August 5, 2014. *Id.* The defendant admitted that he called Gray on that date to purchase a quantity of heroin from Gray. *Id.* Thereafter, a controlled purchase was conducted with the defendant, in which a confidential informant purchased 5.24 grams of heroin from Horne. Notably, Horne told the confidential informant "to sell the heroin" that Horne just gave him, because "they (GRAY and HORNE, Sr.) had 150 more grams of heroin." ECF 148 at 8; *see also* ECF 208-2 at 37. Another controlled purchase of heroin was conducted with the defendant on August 13, 2015. ECF 148 at 8. At that time, a confidential informant purchased 18.05 grams of heroin from the defendant. *Id.*

During the execution of a search and seizure warrant at the defendant's business on November 14, 2014, investigators recovered a H&R .22 caliber revolver, loaded with seven rounds of ammunition, as well as a bag containing 44 rounds of .22 caliber ammunition. *Id.* at 9. Further, the government represented that the evidence would include additional intercepted communications, controlled purchases, and surveillance, proving additional conduct of the defendant in regard to distributing illegal narcotics.

In regard to the Statement of Facts, defense counsel informed the Court that when defendant informed the CI to sell the heroin, because he had 150 more grams of heroin, "it was simply puffery." ECF 208-2 at 10. Mr. Horne claimed he was merely speaking on behalf of Gray, who had the 150 grams.[2] But, the defense conceded: "There is no dispute that Mr. Horne, in fact, said this." *Id.* The prosecutor explained that the defendant was merely seeking "to

---

[2] Of course, the fact that Mr. Gray was in physical possession of the heroin is of no legal consequence in regard to the conspiracy conviction.

reserve the right to argue that the quantity [of heroin] was less than this quantity that Mr. Horne said." ECF 208-2 at 10. And, defense counsel reiterated: "[W]e're not disputing the fact it was said, just that the intent was simply not there." *Id.* at 11.

With that clarification, the defendant expressly agreed to the accuracy of the facts in the Plea Agreement. *Id.* at 12; 17, 38. In particular, Horne agreed that he "read the Statement of Facts and carefully reviewed every part of it with [his] attorney." ECF 148 at 9. He also represented that he "voluntarily agree[d] to it," and he did "not wish to change any part of it." *Id.*; *see also* ECF 148, ¶ 6; ECF 208-2 at 13.

Thereafter, a Presentence Report ("PSR") was prepared. ECF 164. According to the PSR, defendant qualified as a Career Offender under U.S.S.G. § 4B1.1, based on the underlying conviction for a drug trafficking offense, coupled with two prior qualifying convictions. One predicate conviction was for the offense of assault with intent to murder (PSR, ¶ 35),[3] and the other was for a federal conviction for possession with intent to distribute cocaine base (PSR, ¶ 36). *See United States v. Horne*, AMD-05-065 (D. Md.).[4]

After deductions for acceptance of responsibility, the PSR reflected that Horne had a final offense level of 29, and a criminal history category of VI. ECF 164, ¶¶ 25, 39, 63. This resulted in an advisory sentencing guidelines range of 151 to 180 months' imprisonment. *Id.*, ¶ 63.

Sentencing was held on April 12, 2016. ECF 179. Through defense counsel, defendant vigorously disputed the Career Offender finding in the PSR, which was based, in part, on Horne's prior conviction for assault with intent to murder. He argued that the offense is not a

---

[3] The defendant shot the victim multiple times. ECF 164, ¶ 35. Defendant was sentenced to 25 years' imprisonment, with all but 7 years suspended. *Id.*

[4] Judge Davis sentenced Horne to 72 months of incarceration. ECF 164, ¶ 36.

crime of violence within the meaning of § 4B1.1(a)(2) of the Career Offender Guidelines. *See* ECF 170; ECF 208-3 at 7-17.

The government took the position that defendant's Career Offender status should not be determinative in regard to sentencing. Instead, the government urged the Court to consider the factors under 18 U.S.C. § 3553(a). ECF 208-3 (Transcript of April 12, 2016) at 4-5, 15. The Court agreed, stating, *id.* at 15:

> . . . I am persuaded by Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure that I need not resolve this issue [of career offender status]. That rule provides that the Court must rule on a dispute or determine that a ruling is unnecessary because the matter will not affect sentencing.
>
> In my view, that is the case here. I believe that disposition based on 18 U.S.C., § 3553(a) is more than appropriate in this case.

Indeed, to the benefit of Horne, I declined to find that he qualified as a Career Offender. *Id.* at 16. Rather, I said, *id.*: "I will treat him as a non career offender for the purpose of whatever sentence I will ultimately decide to impose."

The Court began the guidelines calculations with a base offense level of 24, under U.S.S.G. § 2D1.1. ECF 208-3 at 6. Of import here, the parties' submissions reflected that they had entered into a C plea, under Fed. R. Crim. P. 11(c)(1)(C), with parameters of 60 to 120 months of imprisonment. ECF 208-3; ECF 149. The government recommended a sentence "in the five-year range." ECF 208-3 at 17. It presented a substantial basis for its recommendation. *Id.* at 17-19.

Defense counsel made a compelling presentation under 18 U.S.C. § 3553(a). ECF 208-3 at 19-32. To that end, the Court noted the "stream" of "very moving character letters" provided to the Court by the defense. Defendant's wife also addressed the Court. *Id.* at 23.

5

Based on the defendant's "limited role" in the offense (*id.* at 41) and other mitigating factors, the Court ultimately imposed a sentence below the agreed upon C plea range of 60 to 120 months' incarceration. Instead, the Court imposed a sentence of 50 months' imprisonment. *See* ECF 180 ("Judgment"). That sentence was almost an entire year below the bottom end of the C plea range.

After sentence was imposed, the defendant noted an appeal to the United States Court of Appeals for the Fourth Circuit. ECF 183. However, that appeal was voluntarily dismissed. ECF 189.

## II. Discussion

### A.

Section 2255(a) of Title 28 of the United States Code, under which Horne filed his Petition, provides relief to prisoners in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack. In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard[ ]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, Crim. No. RDB-10-0507; 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by

lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 Fed. App'x. 332, 334 (4th Cir. 2013) (same).

Horne contends that he received ineffective assistance of trial counsel, which, if so, would constitute a violation of his rights under the Sixth Amendment. In particular, he complains about defense counsel's alleged deficient performance in plea negotiations, resulting in an "elongated sentence . . . ." ECF 197 at 4; *id.* at 5. Further, by adding up the two drug transactions specifically mentioned in the Statement of Facts (*id.* at 7), Horne argues that he was only responsible for 23 grams of heroin, and therefore his final offense level should have been 13, with an advisory guidelines range of 18-24 months' imprisonment. *Id.* at 5. Further, Horne complains that his lawyer failed to challenge the guidelines range and "failed to move forward with [a drug] quantity hearing." *Id.* at 7.

The right to effective assistance of counsel is a well recognized basis for relief under 28 U.S.C. § 2255. *See generally Missouri v. Frye,* 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010). To challenge successfully a sentence of imprisonment under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984). *See Chaidez v. United States,* 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Lafler,* 566 U.S. at 162-63; *Hill v. Lockhart,* 474 U.S. 52 (1985); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker,* 719 F.3d 313, 318 (4th Cir. 2013).

First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland,* 466 U.S.

7

at 688. This is known as the "performance prong," which relates to professional competence. The burden is on the petitioner to establish "'that counsel made errors so serious that "counsel" was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 687).

The performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)). "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting Strickland, 466 U.S. at 690).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland,* 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id*.

As the *Padilla* Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Accordingly, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error]

8

would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). Failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

**B.**

In the case at bar, Horne entered into the Plea Agreement with the government, by which he pleaded guilty to one count of a multi-count indictment. *Hill*, 474 U.S. 52, is noteworthy. There, the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), also provides guidance. In that case, the Fourth Circuit described a petitioner's burden in the context of a post-guilty plea claim of ineffective assistance of counsel. The Court said, *id.* at 475 (quoting *Hill v. Lockhart*, 474 U.S. at 59): "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified. Such a defendant 'must show that there is a

9

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Accord Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992). Moreover, when, as here, a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977).

**C.**

As the guilty plea transcript reflects (ECF 208-2, defendant, while under oath, indicated that he had reviewed the charges with his lawyer; had no complaints about his lawyer's representation of him; there was nothing he wanted his lawyer to do for him that his lawyer failed to do; and he was fully satisfied with the legal services provided to him by his lawyer. *Id.* at 2, 5-7.

In his Petition, Horne argues that his lawyer should have sought a drug quantity hearing in order to secure a lower guidelines level based on a reduced drug quantity. ECF 197 at 4. As the government observes, ECF 208 at 7, defendant "ignores the fact that he went into his sentencing facing a Rule 11(c)(1)(C) sentencing range of 60-120 months imprisonment." Notably, a plea under Rule 11(c)(1)(C) is binding on the parties. Therefore, Horne's lawyer was not permitted, under the terms of the C plea, to advocate for a sentence below 60 months. ECF 208-3 at 23.

Moreover, had the Court concluded that defendant was, in fact, a Career Offender, his advisory guidelines range would have been 151-180 months imprisonment, under U.S.S.G. §

4B1.1(c).[5] Yet, defendant ended up with a sentence almost a year *below* the bottom of the C plea range. As the government correctly observes, this "is testament to the fact that [defense] counsel did a very good job presenting the facts in the matter most favorable to the petitioner, while still complying with the requirements of the (C) disposition." ECF 208 at 8.

The government observes that "the ultimate result achieved by defense counsel demonstrates his effectiveness." *Id.* Indeed, the defendant was charged with a serious crime, and he had a serious prior record. He was also at risk of being found a Career Offender. Even though the C plea called for a sentence ranging between 60 and 120 months' imprisonment, defense counsel managed to persuade the Court, without violating the C plea range, to impose a sentence of almost one year below the bottom of the C plea range. As the government aptly puts it, "There is no rational way that such a performance by defense counsel can be called ineffective. On its face, the 50-month sentence imposed on the petitioner disproves any claim of ineffective assistance of counsel. This was not deficient attorney performance; this was excellent attorney performance." *Id.*

I completely agree with the government. The defendant's bald allegations that his attorney should have obtained an even lower sentence by asking for a hearing on drug quantity is little more than Monday-morning quarterbacking. Horne agreed to the C plea. He also admitted that he told the drug buyer, who was actually a confidential informant, that he and Gray had 150 grams of heroin. ECF 208-1 at 8; ECF 208-2 at 35-38.

Clearly, Horne misapprehends the concept of a drug conspiracy. He was not merely

---

[5] Recent cases in the Fourth Circuit suggest that the disputed offense would, indeed, constitute a crime of violence for Career Offender purposes. *See*, *e.g.*, *United States v. Jenkins*, ____ Fed. App'x ____, 2018 WL 1225728 (4th Cir. Mar. 9, 2018); *United States v. Scales*, ____ Fed. App'x, ____, 2018 WL 107037 (4th Cir. Feb. 23, 2018) (per curiam); *United States v. Waters*, 697 Fed. App'x 760, 767 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 705 (2018).

responsible for the quantity of heroin that he personally handled or distributed during the conspiracy, as he seems to suggest by arguing that the drug quantity was merely 23 grams of heroin. *See* ECF 197 at 5. To the contrary, the guidelines encompass the defendant's own conduct as well as conduct of others reasonably foreseeable to him as part of the conspiracy. U.S.S.G. § 1B1.3(a)(1)(B) provides that, "in the case of a jointly undertaking criminal activity," the base offense level will be determined based on "all acts and omissions of others that were - (i) within the scope of the jointly undertaking criminal activity; (ii) in furtherance of that criminal activity; and (iii) reasonably foreseeable in connection with that criminal activity."

Even if defendant did not physically possess the 150 grams of heroin, he told the confidential informant that Gray had 150 grams of heroin available, and Gray was defendant's coconspirator. Defendant stipulated that he was a member of the drug conspiracy. He also agreed that he made the statement about the 150 grams. Yet, he disputed its accuracy, claiming it was mere "puffery."

The guidelines base offense level of 24 includes a quantity of heroin of more than 100 grams. Petitioner has provided no evidence to suggest that he would have prevailed at a drug quantity hearing. And, even if he prevailed, given the agreed upon C plea range, binding on defendant, he was not prejudiced by the failure of his lawyer to seek a drug quantity hearing.

It is also noteworthy, as the government points out, that not once during the sentencing hearing did I rely on the drug quantity in regard to the imposition of sentence. Rather, I focused on defendant's prior serious record, including a prior federal drug conviction; the fact that Horne's role was relatively minor as compared to the role of his coconspirators; and the many mitigating circumstances in his background that were fully identified by defense counsel and ably presented to the Court.

### III. Conclusion

Defendant's ineffective assistance argument is unfounded. For all the reasons stated, I shall deny the Petition.

A Certificate of Appealability shall not issue. An Order follows.

Date: April 6, 2018          /s/
                             Ellen L. Hollander
                             United States District Judge